**FILED**

**September 29, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:13 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **TINA HAYES,** | ) | **Docket No. 2016-08-0500** |
|     **Employee,** | ) | |
| **v.** | ) | |
| **COSTCO,** | ) | **State File No. 27202-2015** |
|     **Employer,** | ) | |
| **And** | ) | |
| **LIBERTY MUTUAL INSURANCE,** | ) | **Judge Amber E. Luttrell** |
|     **Carrier.** | ) | |

## COMPENSATION HEARING ORDER DENYING WORKERS' COMPENSATION BENEFITS

This matter came before the undersigned Workers' Compensation Judge on August 31, 2017, for a Compensation Hearing. The central legal issues are whether Ms. Hayes established by a preponderance of the evidence that her injury arose primarily out of and in the course and scope of her employment at Costco and whether she is entitled to permanent partial disability and future medical benefits. For the reasons set forth below, the Court holds that Ms. Hayes did not. Thus, the Court holds Ms. Hayes is not entitled to the requested benefits.

### History of Claim[1]

Ms. Hayes works for Costco as a cashier. On April 8, 2015, she worked as a stocker and twisted her left knee on a pallet when she turned from stocking clothes to answer someone's question. Ms. Hayes experienced pain in her knee but was unsure of the extent of her injury and continued working.

Ms. Hayes reported the injury the next morning and received authorized treatment from Dr. Thomas Giel, whom she selected from a panel of physicians. She also sought unauthorized treatment from Dr. Timothy Krahn. The parties agreed Ms. Hayes received

---

[1] The parties stipulated to findings of fact contained in the Appendix of this Order.

1

unauthorized treatment from Dr. Krahn for her left knee beginning in July 2015, including a total left knee replacement. Dr. Krahn testified he did not treat Ms. Hayes under workers' compensation. (Ex. 8 at 34-35.)[2] After completing treatment, Ms. Hayes underwent an independent medical evaluation by Dr. Apurva Dalal. The parties took the depositions of the three physicians and introduced the following medical proof.[3]

*Treatment and Physicians' Testimony*

*a. Dr. Giel*

Ms. Hayes first saw Dr. Giel in May 2015 and provided a history of twisting her left knee at work resulting in pain and popping in her knee. On exam, Dr. Giel noted Ms. Hayes' range of motion was well maintained at zero to 120 degrees. She had tenderness to palpation along the medial and lateral joint lines and pain on McMurray's testing. Dr. Giel diagnosed "osteoarthritis with an arthritic flare" and recommended conservative treatment. He discouraged arthroscopic surgery because he believed it would considerably advance her arthritis for minimal, short-term relief. Dr. Giel provided Ms. Hayes conservative treatment consisting of a cortisone injection and anti-inflammatory medication. He noted in an addendum to his report that her "current symptoms" were more than fifty percent caused by her employment based on Ms. Hayes' reported twisting injury. (Ex. 7 at 17.)

In follow-up visits, Ms. Hayes maintained her range of motion and improved, but she still reported some mechanical symptoms of popping and clicking. Dr. Giel returned her to full-duty work. On July 15, Ms. Hayes returned and complained of an exacerbation of her left knee pain. She informed Dr. Giel she stood up from sitting on her couch at home and felt a pop in her left knee followed by increased pain. She stated she was unable to walk on her left leg and used crutches for weight-bearing. Dr. Giel noted tenderness and effusion on exam and diagnosed "left knee pain, early degenerative changes with a recent exacerbation while getting up from her couch." He aspirated her knee, injected it with cortisone, and placed her on limited-duty work.

Ms. Hayes continued to complain of increased pain, an inability to walk, and

---

[2] Costco filed a Notice of Controversy on September 11, 2015, which is marked as Exhibit 4. The proof was unclear regarding the timing of Costco denying further treatment. However, the Court understood the parties to state that Costco did not authorize Dr. Krahn's treatment for the left knee.

[3] Ms. Hayes alleged a 2013 work injury at Costco to her *right* knee, which is the subject of a separate pending lawsuit in the Chancery Court of Shelby County, Tennessee. Her right knee injury resulted in a knee replacement surgery. The Court notes Ms. Hayes referenced her prior right knee injury in her testimony and the physicians testified extensively regarding the right knee, since their testimony will also be used in the right knee case. This Court listened to Ms. Hayes' testimony carefully and read the physicians' depositions in their entirety; however, it considered, and will only reference, the testimony relevant to her left knee claim in this order.

swelling; therefore, Dr. Giel ordered an MRI. Dr. Giel expressed concern in his notes stating, "I do not see exactly how this is going to relate to her on-the-job injury." *Id.* at 7-9.

Following the MRI, Dr. Giel noted it revealed a meniscus tear, full thickness cartilage loss, and large osteophytes on the medial femoral condyle. He explained her findings looked very similar to her previously injured right knee. He still discouraged an arthroscopy and recommended viscosupplementation injections.[4] Ms. Hayes declined the injections. Dr. Giel discussed her surgical options, which included a high tibial osteotomy versus a total knee arthroplasty and referred her to another surgeon, Dr. Krahn.

Costco subsequently sent Dr. Giel a "Medical Questionnaire" in 2016 with three pages of "yes" or "no" questions regarding causation. In response, Dr. Giel indicated Ms. Hayes reached MMI for her April 8 injury and retained no permanent impairment for that injury. Concerning Ms. Hayes' knee replacement, Dr. Giel concluded that "to a reasonable degree of medical certainty . . . the left knee replacement . . . was not necessitated by the April 8, 2015 work incident." (Ex. 7 at 1-3.)

In Dr. Giel's deposition, counsel asked him more specifically, "[D]o you have an opinion, within a reasonable degree of medical certainty, as to whether the April 8, 2015, work incident caused or contributed more than 50 percent in the knee for having a left knee replacement?" Dr. Giel testified, "My opinion would be . . . that her April 8 injury was less likely than not the cause of her knee replacement; that the osteoarthritis that was already present was more likely the largest contributing factor to her knee for a total knee replacement." (Ex. 6 at 13-14.)

On cross-examination, Dr. Giel testified that Ms. Hayes' MRI findings indicated an extruded meniscus and other findings, which he deemed chronic. He explained it takes a while for those conditions to develop. However, he could not determine when the specific meniscus tear developed. *Id.* at 20.

*b. Dr. Dalal*

Ms. Hayes saw Dr. Dalal for an independent medical evaluation at her attorney's request on May 25, 2016. She complained of pain and swelling in her knees. She stated both knees give out and do not bend normally, and she reported difficulty walking for any length of time. Dr. Dalal testified he reviewed Dr. Krahn's records as part of his evaluation. On exam, Dr. Dalal found swelling, limited knee flexion, and moderate anterior and posterior instability. He noted her bilateral knee replacements and assigned a fifteen percent permanent impairment rating to the body as a whole for Ms. Hayes' left

---

[4] Viscosupplementation injections are a hyaluronic acid derivative, which is a lubricant-type material used to treat arthritis. (Ex. 6 at 24.)

3

knee condition.

Concerning causation, Ms. Hayes' counsel asked, "[D]o you have an opinion to a reasonable degree of medical certainty as [sic] the causation of the injuries to the knees for Ms. Hayes?" Dr. Dalal responded, "[T]he work-related injury Ms. Hayes sustained on both her knees caused her to have [a] knee replacement." (Ex. 5 at 10.) Counsel later asked, "[I]f it is said that Ms. Hayes had arthritic knees, what impact would the trauma have played with regard to the treatment she ultimately received leading up to the knee replacement? How would the trauma have affected that?" Dr. Dalal responded, "Trauma caused aggravation of arthritis and acceleration needing knee replacement." *Id.* at 12.

On cross-examination, Dr. Dalal did not agree that Ms. Hayes' July incident standing up from the couch caused the need for the knee replacement. He testified the April 8 injury made the knee susceptible and weak. He stated, "Had there not been an original injury she would not have needed a knee replacement on this side." *Id.* at 20. Costco argued Dr. Dalal gave an inconsistent rationale when explaining his causation opinions for the right and left knees. Costco pointed out that Dr. Dalal reached the opposite conclusion regarding Ms. Hayes' unrelated right knee claim, where he attributed her right knee replacement to a subsequent work injury at Costco and not her original injury.

*Hearing Testimony*

Ms. Hayes denied any prior injury to her left knee. She testified that she worked full duty after her April 8 injury but continued to have pain in her knee before the incident when she stood up from the couch. After the incident, Dr. Giel placed her on light duty. She stated she did not work until Dr. Krahn released her to return to work on December 23, 2015. She received short-term disability benefits from Costco while off work.

Ms. Hayes testified she continues to work full duty at Costco as a cashier. She stated she is "selective" in what she can do even though she has no permanent restrictions, which Costco allows. Ms. Hayes described difficulty walking up her stairs at home and walking her dog, and she cannot ride a bike. Her knees swell sometimes, and she takes ibuprofen twice daily.

**Findings of Fact and Conclusions of Law**

Ms. Hayes has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff,* 2015 TN Wrk. Comp.

4

App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2016) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

*Analysis*

Ms. Hayes' burden includes proving her knee condition arose primarily out of her employment by showing first that it occurred at a specific time and place. This also requires medical proof to a reasonable degree of medical certainty that her alleged work injury contributed more than fifty percent in causing the disablement or need for medical treatment, considering all causes. Finally, if she contends the work injury aggravated a previous condition, she must show to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14).

The Court cannot find Ms. Hayes satisfied her burden. In so finding, the Court considers the competing expert medical opinions. The authorized treating physician, Dr. Giel, concluded in response to Costco's Medical Questionnaire that "to a reasonable degree of medical certainty . . . the left knee replacement . . . was not necessitated by the April 8, 2015 work incident." He then elaborated in his deposition and testified Ms. Hayes' April 8 work injury was "less likely than not the cause of her knee replacement; that the osteoarthritis that was already present was more likely the largest contributing factor to her knee for a total knee replacement." Dr. Giel's causation opinion is afforded a presumption of correctness rebuttable only by a preponderance of the evidence. *See* Tenn. Code. Ann. § 50-6-102(14)(E) .

Ms. Hayes argued at the hearing that Dr. Giel gave contradictory opinions in that he initially stated after her first visit that her current symptoms were more than fifty percent caused by her employment based on Ms. Hayes' reported twisting injury. Costco countered that Dr. Giel's opinions expressed in the questionnaire and his deposition were subsequent to Ms. Hayes' MRI and knee replacement with Dr. Krahn. It argued, and the Court agrees, that his more recent opinions superseded his May 2015 statement regarding her symptoms at that time.

Dr. Dalal, after evaluating Ms. Hayes for two separate injuries, testified with respect to both knees that "the work-related injury Ms. Hayes sustained on both her knees caused her to have [a] knee replacement." He later stated "trauma caused aggravation of arthritis and acceleration needing knee replacement."

Ms. Hayes acknowledged Dr. Dalal was not asked the specific language set forth in Tennessee Code Annotated section 50-6-102(14) but argued Dr. Dalal found causation and rebutted the presumption favoring Dr. Giel's opinion. The Court disagrees. Our Appeals Board held that a physician may render an opinion that meets the legal standard

5

set forth in section 50-6-102(14) without specifically restating the statutory definition. However, sufficient proof is required from which the trial court can conclude that the statutory requirements of an injury as defined in section 50-6-102(14) are satisfied. *Panzarella v. Amazon.com, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, *14-15 (May 15, 2017). Here, the Court finds Dr. Dalal's testimony falls short in satisfying the current standard for a compensable injury or aggravation. Specifically, the Court finds Dr. Dalal's testimony insufficient to prove that Ms. Hayes' alleged work injury contributed more than fifty percent in causing the disablement or need for medical treatment, *considering all causes*.

Even if Dr. Dalal's opinions sufficiently met the statutory requirements of an injury, the Court still finds Dr. Dalal's testimony insufficient to overcome the presumption of correctness afforded Dr. Geil's opinion. The Court notes Ms. Hayes did not challenge the basis or correctness of Dr. Giel's causation opinion through cross-examination or through Dr. Dalal's deposition. Rather, most of Dr. Dalal's testimony concerned Ms. Hayes' unrelated right knee case. The Court finds the conflicting proof amounts to a difference of opinion between the physicians, and the Court is not persuaded that the preponderance of the evidence overcomes the presumption of correctness of Dr. Giel's opinion.[5]

Thus, this Court concludes that Ms. Hayes failed to establish by a preponderance of the evidence a compensable injury or aggravation arising primarily out of and in the course and scope of her employment with Costco considering all causes.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Hayes' claim against Costco for workers' compensation benefits is denied.

2. Absent an appeal of this order by either party, the order shall become final thirty days after issuance.

3. Costs of $150.00 are assessed against Costco under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2016), to be paid within five days of this order

---

[5] Costco also argued Ms. Hayes sustained an "independent intervening injury" in July 2015 when she stood up from the couch, felt a pop in her knee, and experienced a significant increase in pain and symptoms. The Court notes the parties focused much of their questioning of the physicians on her condition before and after the incident. Our Appeals Board has confirmed that "while events unrelated to an employee's conduct may arguably constitute an independent intervening incident sufficient to break the chain of causation, there must be negligent, reckless, or intentional conduct on the part of the employee." *Lee v. W. Plastics*, 2016 TN Wrk. Comp. App. Bd. LEXIS 53, at *10 (Oct. 20, 2016). Here, the Court finds Ms. Hayes' actions in standing from her couch did not amount to intentional or negligent conduct and further no medical proof supports this argument. However, the pertinent inquiry is whether Ms. Hayes sustained a compensable injury under 50-6-102(14) by a preponderance of the evidence rather than any subsequent intervening event.

becoming final.

4. Costco shall prepare and file a statistical data form within ten business days of the date of this order under Tennessee Code Annotated section 50-6-244.

**ENTERED the 29th day of September, 2017.**

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

7

# APPENDIX

Stipulated Findings of Fact:
1. Employee alleged an injury on April 8, 2015.
2. Employee gave notice of her alleged injury.
3. Employee is fifty-two years of age.
4. Employee is a high school graduate.
5. Employee received authorized treatment from Dr. Giel. Dr. Giel's medical expenses were paid by Employer or its workers' compensation carrier.
6. Employee received short-term disability benefits from a Costco-funded plan for the period she was off work.
7. Employee returned to work for Employer earning the same or greater wage as she earned prior to the alleged injury.

Exhibits:
1. First Report of Injury or Illness
2. Wage Statement
3. Panel
4. Notice of Controversy
5. Deposition of Apurva Dalal, M.D.
6. Deposition of Thomas V. Giel, III, M.D.
7. Medical Records of Dr. Thomas Giel
8. Deposition of Timothy H. Krahn, M.D.

Technical record:[6]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Petition for Benefit Determination (post-discovery)
4. Post-Discovery Dispute Certification Notice
5. Transfer Order
6. Witness and Exhibit List filed by Employer
7. Motion to Continue Compensation Hearing filed on January 27, 2017
8. Order Granting Motion to Continue Compensation Hearing
9. Employee's Witness & Exhibit List
10. Amended Scheduling Order
11. Supplement to Exhibit List
12. Pre-Compensation Hearing Statement
13. Employer's trial brief
14. Employee's trial brief

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on the 29th day of September, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Christopher Taylor, Employee's Attorney | | | X | ctaylor@taylortoon.com sreynolds@taylortoon.com |
| Kristen C. Stevenson, Employer's Attorney | | | X | kcstevenson@mijs.com telett@mijs.com |

Penny Shrum, Court Clerk
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**